UBIQUITI NETWORKS, INC., Plaintiff,

v.

KOZUMI USA CORP., et al., Defendants.

No. 4:12mc66–RH/CAS.

United States District Court,
N.D. Florida,
Tallahassee Division.

Jan. 28, 2013.

**518**

[redacted]

James Riley Davis, Akerman Senterfitt, Tallahassee, FL, for Plaintiff.

## ORDER

CHARLES A. STAMPELOS, United States Magistrate Judge.

On December 4, 2012, non-party Eric Walter Camil, Sr. (Camil) filed a motion to quash a November 21, 2012, subpoena. Doc. 1. Finding the ruling clear, an Order was entered on December 5, 2012, granting the motion to quash. Doc. 3.

On January 8, 2013, Camil filed a second motion to quash two subpoenas. Doc. 4. The motion advised that Plaintiff, Ubiquiti Networks, Inc. (Ubiquiti) served two subpoenas on Camil, a licensed Florida private investigator and non-party, on December 28, 2012. Doc. 4. The first subpoena requested Camil to produce documents, items 1 through 7, on January 11, 2013, and the second subpoena requested Camil to appear and testify at a deposition in Tallahassee, Florida, on January 14, 2013. Docs. 4, 4–1, 4–2. On January 9, 2012, an Order was entered staying discovery and provided Plaintiff and Defendants with the opportunity to file a response to the motion to quash by January 15, 2013, and Camil was authorized to file a reply by January 18, 2013. Doc. 5. Ubiquiti filed a response on January 15th followed by Camil's reply filed on January 18th. Doc. 7, 9. (Ubiquiti also filed a motion to seal Exhibit I that is part of several attachments to Ubiquiti's response. Doc. 8.)

### A. The Underlying Complaint and Preliminary Injunction

On October 8, 2012, Ubiquiti filed a First Amended Complaint in the United States District Court, Northern District of California, Oakland Division, Case No. 12–CV2582–CW. Doc. 7–1, Exhibit A. Ubiquiti sued Kozumi USA Corp., a Florida corporation (Kozumi); Shao Wei Hsu (Hsu); and Does One through One Hundred. Doc. 7–1, Exhibit A at 1. Ubiquiti alleges it is a Delaware corporation with its principal place of business in San Jose, California, and "designs, develops and offers for sale under the UBIQ-UITI mark a wide variety of equipment used in wireless communications, including receivers, transmitters, routers, and antennas, as well as software used to operate the devices." *Id.* at 2. Ubiquiti alleges that Kozumi is a Florida corporation with its principal place of business in Miami, Florida, and "is a former distributor of genuine Ubiquiti products" and "continues to distribute equipment used in wireless communications, including counterfeit Ubiquiti products." *Id.* Hsu is alleged to be a Brazilian citizen, residing and conducting business in Wellington, Florida, and "is the founder, sole owner and director of Kozumi." *Id.* It is also alleged that the Federal District Court in California "has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks); 28 U.S.C. § 1367 (supplemental jurisdiction); and the U.S. copyright laws, 17 U.S.C. § 101, *et seq.*" *Id.* (In addition to the federal claims, Ubiquiti raises several claims under California law and one common law claim. *Id.* at 32, 35, 37, and 39.)

In its Preliminary Statement to the First Amended Complaint, Ubiquiti alleges:

1. Defendants have masterminded an international counterfeiting scheme to profit illegally from Ubiquiti's established trademarks and goodwill in the wireless and networking technology markets. Using stolen source code and proprietary designs, Defendants have been manufacturing millions of dollars' worth of counterfeit Ubiquiti products, packaging them in boxes that are virtually identical to genuine Ubiquiti packaging, and selling them to unsuspecting customers throughout the world. These customers are deceived into believing that they are purchasing genuine Ubiquiti products when they are actually buying substandard counterfeit goods. The availability of these counterfeit products in the marketplace is causing substantial harm to the Ubiquiti brand and business and needs to be stopped immediately.

*Id.* at 1.

A review of the attachments to Ubiquiti's response indicates that on June 20, 2012, United States District Judge Claudia Wilken

entered an "Order Granting, in Part, Ubiquiti's Application for Temporary Restraining Order, Granting Defendants' Motion to Accept Objections and Setting Date for OSC Hearing." Doc. 7–1, Exhibit B at 50–88. In the Order granting, in part, the TRO, Judge Wilken noted that "[a]lthough Ubiquiti asserts thirteen causes of action in its complaint, only the three Lanham Act claims are at issue here. Ubiquiti does not seek a TRO for its copyright claims." Doc. 7–1, Exhibit B at 78.

On July 5, 2012, Judge Wilken entered an "Order Granting Motion for Preliminary Injunction" and also entered a "Preliminary Injunction" against HSU, "aka William Hsu Wu, and Kozumi" and others. Doc. 7–1, Exhibits C and D at 90–96, 98–99.

### B. Ubiquiti's Request of Camil to Produce Documents and Communications and to be Deposed

In support of its need to subpoena documents and communications and further depose Camil, Ubiquiti asserts in its response to the motion to quash:

> Documents produced by Hsu confirm that Camil had been hired to investigate Ubiquiti CEO Robert Pera, that he gave Hsu reports on his investigations, and that those investigations were related to stock analysts' reports on Ubiquiti that Ubiquiti believes hurt the company and its stock price. (*See* Taylor Decl. Exs. H, I, and J.) Camil's investigations are intertwined with Hsu and Kozumi's activities and therefore highly relevant to Ubiquiti's case.

Doc. 7 at 1–2. Ubiquiti further asserts:

> The subpoenas to Camil seek documents and information directly relevant to the attacks on Ubiquiti. Discovery obtained from Defendant Hsu in the underlying litigation revealed correspondence between Hsu and Camil showing that Camil had been hired to investigate Ubiquiti and its CEO, Robert Pera. (Taylor Decl., Exs. H, I.) Camil had regular correspondence not only with Defendant Hsu, but also with Hsu's counterfeiting partner in China, Kenny Deng, in May 2012. (Taylor Decl., Ex. J.) Those communications indicate that Camil, in addition to investigating Ubiquiti and its CEO, has connections to one or more stock analysts to whom he could feed

information about Ubiquiti. (*Id.*) This raised for Ubiquiti the question of whether Camil was involved in feeding false information about Ubiquiti to stock analysts and the media and, if so, how.

Based on that discovery, on December 27, 2012, Ubiquiti served a subpoena on Camil for documents: (1) sufficient to show the identity of Camil's client; (2) relating to Defendant Kozumi USA, Corp; (3) showing communications between Camil and Kozumi's current or former directors, officers or employees; (4) relating to Hoky Technologies, Ltd. (the company of Hsu's confederate Kenny Deng); (5) showing communications between Camil and Hoky's current or former directors, officers or employees; (6) relating to Ubiquiti; and (7) and relating to Robert Pera. (Taylor Decl. Ex. E, G.) On the same day, Ubiquiti served a subpoena on Camil, seeking testimony about the same matters. (Taylor Decl. Ex. F, G.)

*Id.* at 4–5; *see also* doc. 4, exhibit 1(request for production items 1–7).

### C. Camil's Affidavit

Camil filed an affidavit in support of the motion to quash. Doc. 4, Exhibit 3. Camil states that he is a licensed private investigator and has worked in this capacity for 13 years. *Id.* at 2. Camil describes the events leading to service of the two subpoenas. *Id.* at 3. He then states:

> 6. Any communications that I have had with such parties [referring to the persons named in the subpoena requesting production of documents and communications], any familiarity that I may have had with such matters, and any documents or other materials that I may possess that pertain to such matters arise entirely and exclusively out of a private investigation that I concluded *on behalf of clients who are not parties to the above-captioned proceeding pending in California.*

*Id.* at 3. (emphasis added). Camil asserts that Florida law forbids him from disclosing the results of his investigation without his clients' consent and that they have not consented to any disclosure. *Id.* at 3–4. Camil also asserts that production "is also burden-

some," in light of the service date and the limited time (ten (10) business days) to comply. Camil stated that he "would need to devote enormous time to reviewing thousands of files (not including e-mails) that may contain information responsive to the Subpoena." *Id.* at 4–5.

### D. Arguments of the Parties

Camil argues that all of the documents sought by the subpoenas arise out of and are the results of a private investigation that Camil conducted on behalf of clients who are not parties in the underlying case and that Camil's clients have not consented to the disclosure of the information requested. Doc. 4 at 2. Camil argues that the subpoenas should be quashed because production would violate the private investigator privilege set forth in Fla. Stat. § 493.6119 (2012) (section 493.6119) and because the requests subject Camil to an undue burden.[1] In support, Camil relies on the plain language of section 493.6119; Florida Division of Licensing (Division) Legal Opinion 97–10; several opinions from the Florida Commission on Ethics (Commission), CEO's 78–82, 80–73, 82–6, 82–36, 84–111, and 96–16; and a 1995 discovery order entered by a circuit court judge that may have been referred to in Legal Opinion 97–10. Doc. 4, Exhibits 4–6.

In Response, Ubiquiti argues, citing to Federal Rule of Evidence 501, that whatever the scope of Florida's private investigator privilege, "the private investigator privilege is a creature of Florida state law" and "cannot block Ubiquiti's federal subpoena because it does not apply in a federal court case where Florida law does not supply the rule of decision." Doc. 7 at 6. Ubiquiti further argues that applying Florida's privilege would thwart Federal interests and, relying on Eleventh Circuit precedent, "that a federal court should not apply the law of privilege of its forum state as 'a matter of comity.'" *Id.* at 7. Ubiquiti also suggests that Camil's argument of undue burden could have been addressed by Ubiquiti had the concern been timely raised by Camil. *Id.* at 8–9. Aside from suggesting that an extension of time would have been granted by Ubiquiti, no

suggestions are made regarding limiting the scope of the production requests. *Id.*

In reply, citing to Fed.R.Evid. 501 and two Eleventh Circuit cases cited by Ubiquiti, Camil argues that the "private-investigator privilege" should be recognized under Federal Common Law, doc. 9 at 3–5, and that the private-investigator privilege should be enforced by this Court as a matter of comity. *Id.* at 5–8. Camil also argues that that the subpoenas should be quashed because they are unreasonable as compliance would require Camil "to violate a state criminal statute" and violate his Fifth Amendment privilege against self incrimination. Camil reiterates his prior argument that the subpoenas are unduly burdensome. *Id.* at 8–10.

### E. Legal Analysis

#### 1. Background; Requirements under the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R.Civ.P. 26(b)(1).

■ Except as noted herein, Federal Rule of Civil Procedure 45 governs discovery from non-parties by subpoena. The purpose of a subpoena duces tecum is to compel the production of documents or things relevant to the facts at issue in a pending judicial proceeding. A subpoena duces tecum is the only way to compel a non-party to produce documents or other materials. *Am. Airlines, Inc. v. In Charge Mktg., Inc.,* Case No. 2:10–CV–00467–JES–SPC, 2012 WL 2116349, *2,

1. This Order addresses the second set of subpoenas that are attached to Camil's motion, doc. 4,

exhibits 1 and 2.

2012 U.S. Dist. LEXIS 80346, *5 (M.D.Fla. June 11, 2012).

Federal Rule of Civil Procedure 45(c)(1) places a burden on the issuing party or attorney to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." [2] Rule 45(d) also places duties on the person responding to a subpoena. Relevant here, "[a] person withholding subpoenaed information under a claim that it is privileged ... must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed.R.Civ.P. 45(d)(2)(A)(i)-(ii); *Mullaney v. Endogastric Solutions, Inc.,* Case No. 5:11–CV–591–Oc–PRL, 2012 U.S. Dist. LEXIS 131385, *2–3 (M.D.Fla. Sept. 14, 2012) (to the extent the non-party "is refusing to produce documents on the basis of privilege, it should be done through the use of a privilege log") (citation omitted); *see also R.J Reynolds Tobacco v. Philip Morris, Inc.,* 29 Fed.Appx. 880, 882 (3d Cir.2002) (party opposing production on the ground of privilege has the burden of establishing its documents are privileged).

■ "The reach of a subpoena issued pursuant to Rule 45 is subject to the general relevancy standard applicable to discovery under Fed.R.Civ.P. 26(b)(1)." *Syposs v. U.S.,* 181 F.R.D. 224, 226 (W.D.N.Y.1998); *Gonzales v. Google, Inc.,* 234 F.R.D. 674, 679 (N.D.Cal.2006) (noting that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules) (quotes and cite omitted).

Although Rule 26(b) applies to discovery of non-parties as well as parties in a suit, non-party status is considered by the court in weighing the burdens imposed in providing the requested discovery. *See American Standard Inc. v. Pfizer Inc.,* 828 F.2d 734 (Fed.Cir.1987) (affirming district court's restriction of discovery where non-party status "weighted against disclosure"); *American Electric Power Compa-*

*ny, Inc. v. United States,* 191 F.R.D. 132, 136 (S.D.Oh.1999) (status as a non-party is a factor that weighs against disclosure); *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 179 (E.D.N.Y.1988) (non-party status is a significant factor in determining whether discovery is unduly burdensome). The limited case law in this area reveals a case-specific balancing test wherein the court must weigh factors such as relevance, the need of the party for the documents, the breadth of the document request, and the time period covered by the request against the burden imposed on the person ordered to produce the desired information. *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545 (11th Cir.1985); *American Electric Power Company, Inc. v. United States,* 191 F.R.D. 132 (S.D.Oh. 1999).

*Cytodyne Techs., Inc. v. Biogenic Techs., Inc.,* 216 F.R.D. 533, 535 (M.D.Fla.2003); *see also Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir.2004).

■ This Court does not have the benefit of involvement with the underlying litigation. This Court, however, will adhere to the principle stated in *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.,* 813 F.2d 1207 (Fed.Cir. 1987). "A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be 'especially hesitant to pass judgment on what constitutes relevant evidence thereunder.' Where relevance is in doubt, the rule indicates that the court should be permissive." *Id.* at 1211–12. (citations omitted). This does not mean, however, that the Court is required to abdicate its responsibility to review a subpoena under the Federal Rules when presented with a motion to quash. *See Gonzales,* 234 F.R.D. at 681.

Under Rule 45(c)(3)(A)(i)-(iii), "a court may quash or modify a subpoena if it (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) subjects a person

---

**2.** "With regard to the burden imposed on non-parties in responding to discovery requests, courts consider the following factors: relevance, the requesting party's need for the documents, the breadth of the document request, and the

time period covered by the request." *Bozeman v. Chartis Cas. Co.,* Case No. 2:10–cv–102–FtM–36SPC, 2010 WL 4386826, *3–4, 2010 U.S. Dist LEXIS 121678, *9 (M.D.Fla. Oct. 29, 2010) (citations omitted).

to undue burden." *Wiwa,* 392 F.3d at 817–18.

## 2. Is there is a Federal Common Law Private Investigator/Client Privilege?

■ "The meaning of the term 'privileged' under Rule 26(b)(1) is determined by reference to the Federal Rules of Evidence." *Int'l Horizons, Inc. v. Comm. of Unsecured Creditors,* 689 F.2d 996, 1002 (11th Cir.1982) (citation omitted). The party raising a privilege has the burden of establishing the existence of the privilege. *Heathman v. U.S. Dist. Court for Cent. Dist. of California,* 503 F.2d 1032, 1033 (9th Cir.1974).[3]

Federal Rule of Evidence 501 provides:

The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court.

But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

For the most part, jurisdiction of the federal district court in California in the underlying case is premised upon a federal question, although there are several California state law claims. *See* Doc. 7–1, Exhibit A. Thus, the determination of whether a privilege exists in this matter appears to be a matter of federal law. Cf. *Hancock v. Hobbs,* 967 F.2d 462, 467 (11th Cir.1992); Fed. R.Evid. 501. The authority of this court to recognize a new federal privilege which precludes discovery is very limited:

Federal Rule of Evidence 501 does not purport to enumerate a finite list of evidentiary privileges that are to be recognized in federal courts. Instead, the rule provides that in federal law proceedings, "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501. Rule 501 clearly provides federal courts with the statutory power to recognize new or "novel" evidentiary privileges. However, "there has been a notable hostility on the part of the [federal] judiciary to ... new privileges." *In re Dinnan,* 661 F.2d 426, 430 (5th Cir.1981). This is because privileges contravene the fundamental principle that "the public ... has the right to every man's evidence." *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980). "Exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). Therefore, the rule in this Circuit is that a new privilege should only be recognized where there is a "compelling justification." *In re Dinnan,* 661 F.2d 426, 430 (5th Cir.1981).

*Int'l Horizons, Inc.,* 689 F.2d at 1003–04. *See also Adkins v. Christie,* 488 F.3d 1324, 1328 (11th Cir.2007) ("[T]here is a presumption against privileges which may only be overcome when it would achieve a 'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' *Trammel,* 445 U.S. at 50, 100 S.Ct. at 912. This is a high standard, and 'only the most compelling candidates will overcome the law's weighty dependence on the availability of relevant evidence.' " (citation omitted).).

No party has cited a case that has recognized a private investigator privilege as a federal common law privilege and no case has been found. *See generally United States Dep't of Educ. v. NCAA,* 481 F.3d 936, 938 (7th Cir.2007) (cryptically stating that "there is no private-investigator's privilege"). Also, no party has cited to other states that may afford some protection to private investigators and their clients, although cursory research reveals that there are several states that afford some protection.[4]

---

**3.** Camil does not argue that the requested information is protected as attorney work product. *See generally In re Grand Jury Subpoena,* 220 F.R.D. 130, 144 (D.Mass.2004) (courts typically do not extend work product protection to documents prepared by non-parties or their agents).

**4.** For example, Cal. Bus. & Prof.Code § 7539(a) (2013) provides: "Any licensee or officer, di-

Another example is from the state of Michigan. Mich. Comp. Laws Serv. § 338.840 (2012) provides:

§ 338.840. Divulging of information; willful sale of or furnishing false information; penalty; privileged communications; notice and hearing.

Sec. 20. (1) Any person who is or has been an employee of a licensee *shall not divulge* to anyone other than his or her employer or former employer, or as the employer shall direct, except as he or she may be required by law, any information acquired by him or her during his or her employment in respect to any of the work to which he or she shall have been assigned by the employer. Any employee violating the provisions of this section and any employee who willfully makes a false report to his or her employer in respect to any work is guilty of a misdemeanor.

(2) Any principal, manager, or employee of a licensee who willfully furnishes false information to clients, or who willfully sells, divulges, or otherwise discloses to other than clients, except as may be required by law, any information acquired during employment by the client is guilty of a misdemeanor and is subject to summary suspension of license and revocation of license upon satisfactory proof of the offense to the department. *Any communications, oral or written, furnished by a professional or client to a licensee, or any information secured in connection with an assignment for a client, is considered privileged with the same authority and dignity as*

*are other privileged communications recognized by the courts of this state.*

(3) Suspension, revocation, denial, or other action against a licensee or applicant for a license as described in section 10 shall be accompanied by notice and an opportunity for a hearing under the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328.

Mich. Comp. Laws Serv. § 338.840 (2012) (emphasis added). Similar language has been interpreted by the Court of Appeals of Michigan in *Ravary v. Reed,* 163 Mich.App. 447, 415 N.W.2d 240 (Mich.Ct.App.1987) (recognizing, under Michigan law, a private detective-client privilege analogous to the attorney-client privilege). In *Ravary,* the issue before the Court was whether the defendants may be compelled to divulge to the plaintiff the name of the person or entity who hired them to investigate the plaintiff. The Court held that the privilege applied under the facts since disclosure of defendant's client's name would be tantamount to disclosure of the substance of confidential communications between defendant and his client, and therefore, the Court denied plaintiff's motion to compel answers to the interrogatories. 415 N.W.2d at 244.[5] In support of its decision, the Court stated:

The statute reflects the Legislature's determination that broad protection is to be accorded the private detective-client relationship. Any communication by a client to a licensee and any information secured in connection with an assignment for a client is privileged. *The Legislature's ex-*

rector, partner, or manager of a licensee may divulge to any law enforcement officer or district attorney, or his or her representative, any information he or she may acquire as to any criminal offense, but he or she shall not divulge to any other person, except as he or she may be required by law so to do, any information acquired by him or her except at the direction of the employer or client for whom the information was obtained." In *Flynn v. Superior Court,* 57 Cal. App.4th 990, 67 Cal.Rptr.2d 491 (Cal.Ct.App. 1997), the issue was whether an investigator could be compelled to reveal the identity of her employer. The Court concluded that § 7539(a) is clear that "only information obtained for the client during the course of the investigation is covered by the section," not "the identity of the client." 57 Cal.App.4th at 995, 67 Cal.Rptr.2d 491. The Court did not decide whether

§ 7539(a) creates a private investigator privilege because of the limited holding. *Id.* at 993–94, 67 Cal.Rptr.2d 491.

5. *Ravary* involved a lawsuit against Reed, the owner of a licensed private detective agency. Plaintiff alleged, in part, that Reed had embarked on a campaign to smear Plaintiff's reputation. The issue presented on appeal was whether Reed and the other defendants "may be compelled to divulge to plaintiff the name of the person or entity who hired them to investigate plaintiff." The trial court granted plaintiff's motion to compel answers and Reed and others were granted leave to appeal. The Court ultimately held that the information sought was privileged and the trial court's decision was reversed. 415 N.W.2d at 241–42, 244.

*press extension to those communications of the authority and dignity conferred upon other, judicially recognized privileged communications prompts us to construe the scope of this privilege by analogy to the attorney-client privilege.*

415 N.W.2d at 242–43 (emphasis added). Importantly, the Court quoted from 8 Wigmore, Evidence (McNaughton rev), § 2286, p. 532:

> In recent times in the United States, however, legislation has been sought, here and there successfully, to establish new privileges. Most of these attempts have been made by organized occupational groups who believe that for the protection of their own particular interests a privilege is needed and is justified. In no instance has it been made to appear that the occasional disclosure, in judicial proceedings, of the communication sought to be kept secret would be injurious to the general exercise of the occupation, or that all the conditions exist which justify a general privilege (§ 2285 *supra*). Statutes which do no more than penalize general breaches of confidence—e.g., all statutes respecting disclosure by *detectives* n. 19 ...—explicitly permit disclosure in judicial proceedings. They should be distinguished from statutes erecting testimonial privileges.
>
> n.19 Four states have statutes making it unlawful for a private detective to divulge information acquired on behalf of a client except as he may be required by law so to do. Cal. Bus. & Prof. Code § 7538; Mass. Gen. Laws Ann. c. 147, § 28 (1958) (construed by *Attorney–General v. Pelletier,* 240 Mass. 264, 134 N.E.

406 [407] (1922), not to apply to exclude testimony at a trial); N.Y. Gen. Bus. Law § 82 (construed by *People v. Roach,* 215 N.Y. 592, 109 N.E. 682 [618] (1915), not to apply to exclude testimony at legal proceedings); Pa. Stat. Ann. tit. 22, § 24 (1955).

*See also* Ariz. Rev. Stat. Ann § 32–2425; Conn. Gen'l Stat. Ann. § 29–156g; Del. Code Ann. 24 § 1315; Fla. Stat. Ann. 493.32; Hawaii Rev. Stat. § 463–15; Ill. Ann. Stat. Ch. 111, para. 2680; Kan. Stat. Ann. 75.7b08; Minn. Stat. Ann. 326.336; Mont. Code Ann. 37–60–402; N.J. Stat. Ann. 45:19–15; N.M. Stat. Ann. 61–27–25; N.C. Gen. Stat. 74C–16; Okla. Stat. Ann. 59, § 1750.8; Vt. Stat. Ann. 26, § 3179. The Michigan statute not only penalizes breaches of confidence but clearly establishes a testimonial privilege. The statute represents a declaration by the Legislature that the conditions necessary to the establishment of a privilege are present in the private detective-client relationship. This Court is bound to enforce the policy set forth by the Legislature. *See In re Petition of Delaware,* 91 Mich.App. 399, 405, 283 N.W.2d 754 (1979), lv. den. 407 Mich. 911, 285 N.W.2d 43 (1979), discussing the similarly broad polygrapher privilege. MCL 338.1728(2); MSA 18.186(28)(2).

415 N.W.2d at 242–43. The Court emphasized that its holding "is limited to the facts presented." [6] *Id.* at 244 n. 6.

*Ravary* is instructive in light of the express language set forth in the statute that prohibits the licensed private investigator from divulging certain information and "clearly establishes a testimonial privilege" and also "represents a declaration by the Legislature that the conditions necessary to

---

**6.** In an unpublished opinion, another panel of the court of appeals stated: "However, in saying this, the Court [in *Ravary* ] was clearly referring to its statement that 'disclosure of the client's name *under the facts of this case* would be tantamount to disclosure of the substance of that confidential communication' (emphasis added). In other words, the *Ravary* Court unambiguously held that confidential communication was privileged but made clear that revealing the name of the client would not in all cases be tantamount to revealing confidential communication. Whether revealing the name of the client would be tantamount to revealing confidential communication is not at issue in this case." *Tezak v. Huntington*

*Research Assocs.,* No. 215490, 2001 WL 672154, at *2, 2001 Mich.App. LEXIS 1136, at *5 (Mich. Ct.App. May 15, 2001). The same Court also noted that "*Ravary* does not necessarily prevent a suit such as the present one, which contains claims of trespass and invasion of privacy. A detective may reveal information about his investigation that would not reveal the contents of his communication to his client or employer. For example, if an employee of defendant revealed that he placed a tracking device on plaintiffs' car, it does not appear that the contents of his communications with the client would be revealed." *Tezak,* 2001 WL 672154, *2, 2001 Mich.App. LEXIS 1136, at *6.

the establishment of a privilege are present in the private detective-client relationship." *Ravary*, 415 N.W.2d at 243.

In *Miller Oil Co. v. Smith Indus.*, File No. 1:88 CV 785, 1990 WL 446502, 1990 U.S. Dist. LEXIS 17176 (W.D.Dist.Mich. Dec. 13, 1990), the Court quoted from *Ravary*, noting that the "*Ravary* court construed the scope of the privilege by analogy to the attorney-client privilege," and as a result, "it is essential that the element of confidentiality be vital to the relationship between the parties." *Id.* at *3, 1990 U.S. Dist. LEXIS 17176, at *8. The Court, however, distinguished *Ravary*. *See also Itskin v. Gibson*, Case No. 2:10–CV–689, 2011 WL 5326165, *4, 2012 U.S. Dist. LEXIS 128688, *11 (S.D.Ohio Nov. 7, 2011) (noting that the relevant Michigan statute includes strong privilege language completely absent from Ohio Revised Code § 4749.13).[7] (*Itskin* did not involve a request for documents from a non-party.).

◼ Based upon the foregoing, the Court is not persuaded that there is a federal common law private investigator privilege.

The Court also rejects Camil's argument that section 493.6119(1) should be construed to create a private investigator/client privilege as a matter of comity. Doc. 9 at 5–8.

◼ The underlying case in California presents for the most part federal questions, although there are several state law claims that implicate California substantive law, not Florida substantive law. Also, Florida law would not provide "the rule of decision" for any "claim or defense" in the pending action. Accordingly, the federal law of privilege provides the rule of decision in the pending civil action where the Federal Court's jurisdiction is premised mainly upon a federal question. *See Hancock*, 967 F.2d at 467 ("[T]he federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is relevant to a pendent state law count which may be controlled by a contrary state law of privilege."). *See also Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir.2000) (When evidence covered by a privilege is relevant to both a federal and state claim or defense, the courts generally apply the federal law of privilege.); *Osterneck v. E.T. Barwick Indus., Inc.*, 82 F.R.D. 81, 87–88 (N.D.Ga.1979) (declining to apply Georgia's accountant privilege in a case "based almost totally on the federal securities laws").

Even if the Court were inclined to decide the issue, which it is not, neither party cites any Florida case law evaluating section 493.6119(1). The paucity of case law on this subject was also noted by another magistrate judge in *Lake Shore Radiator, Inc. v. Radiator Express Warehouse*, Case No. 3:05–cv–1232–J–12MCR, 2007 WL 842989, *6–7, 2007 U.S. Dist LEXIS 19028, *19–20 (M.D.Fla. Mar. 19, 2007). In *Lake Shore Radiator*, the Court, however, refrained "from deciding the investigative privilege issue." *Id.* at *7, 2007

---

7. "The pertinent inquiry before the Court is the scope of Ohio Revised Code § 4749.13. This section of the Ohio Revised Code places prohibitions on private investigators providing, in pertinent part, that no person licensed in the business of private investigation shall '[d]ivulge any information acquired from or for a client to persons other than the client or the client's authorized agent without express authorization to do so or unless required by law....' Ohio Rev.Code § 4749.13." Although the facts *Itskin* are different from the facts in the instant matter, the Court stated further:

> The statutory language, however, is devoid of any indication that the client of a private investigator who subsequently chooses to bring a lawsuit, or who faces a lawsuit relating to an investigation, may then use § 4749.13 to shield information gathered in an investigation from discovery. On its face, Ohio Revised Code § 4749.13 requires only that the private inves-

tigator not divulge information unless required by law. The statute does not indicate or imply that once in the hands of the client, information a private investigator gathers is protected from discovery. Furthermore, § 4749.13 explicitly acknowledges that the law may in certain instances require a private investigator to disclose information. Finally, the Court finds no basis from the language of § 4749.13 for holding that a private investigator's communications with third parties regarding the findings of an investigation and documents a private investigator voluntarily displays to third parties—presumably with the client's consent—are privileged." *Id.* at *3–4, 2012 U.S. Dist. LEXIS 128688, at *9–10.

The Court also found "no grounds for equating [§ ] 4749.13 to the attorney-client privilege" and also stated that "no parallel common-law doctrine recognizes a private-investigator privilege." *Id.* at *4, 2012 U.S. Dist. LEXIS 128688, at *10–11.

U.S. Dist LEXIS 19028, at *20. Notwithstanding, Camil refers to several non-case law opinions to support his argument, aside from his statutory construction argument.

In 1997, the Florida Division of Licensing (Division) issued Legal Opinion 97–10. Doc. 4–4, Exhibit 4. In this opinion, the Division discussed whether a licensed private investigator should honor a subpoena to testify at trial or deposition concerning confidential information obtained in the course of an investigation. *Id.* The Division referred to a recent order entered by a Florida circuit court judge who "equated the prohibition of releasing confidential information in Section 493.6119, to a 'privilege' like the attorney-client privilege" and that " 'a subpoena is insufficient to override the privilege provided in Florida Statute 493.6119' and refused to order the private investigator to reveal the results of his investigation via testimony or production of documents because of the 'privilege' contained in Section 493.6119, Florida Statutes." *Id.*[8] The Division opined that a licensed private investigator who is served with a subpoena "should file a motion with the court to quash the subpoena based on the confidentiality requirement contained in Section 493.6119." The Division further stated that "[i]f the judge orders you to testify, you may then testify without the division pursuing disciplinary action. The judge's order may also be appealed." Also, "[t]he division's concern is that you, as a licensed professional, take the action required to protect your client and the information in your file unless you are ordered by a court to divulge that information." The Division did not opine that section 493.6119 creates a private investigator-client privilege. Doc. 4–4, Exhibit 4.

None of the opinions rendered by the Commission refer to section 493.4119(1) as conferring a testimonial privilege. Rather, the Commission routinely refers to this statute as a statutory duty to keep confidential information learned via private investigative work. *See, e.g.,* CEO 94–014. Also, the Commission acknowledges "that it is not [the Commission's] role to interpret statutory provisions outside of the Code of Ethics." *Id.*

Aside from Judge McDonald's discovery order, which is not binding precedent, *see generally Fieselman v. State,* 566 So.2d 768, 770 (Fla.1990), there is no decisional case law in Florida declaring that section 493.6119(1) creates a private investigator-client privilege, akin to the attorney-client privilege or otherwise.

### 3. Relevancy and Reasonableness of the Subpoenas

■ Camil asserts that section 493.6119(1) creates a blanket private investigator-client privilege that shields Camil from producing any of the requested documents and communications and from appearing at a deposition to answer any questions relating to the documents production request or otherwise. The Court respectfully disagrees.[9] However, Camil is entitled to some relief.

---

8. Camil provided the Court with a 1995 discovery order from Circuit Judge Robert McDonald who ruled that a private investigator was not required "to bring records, tapes, photos of surveillance done at and on [one of the parties], including surveillance." Doc. 4–5, Exhibit 5. Judge McDonald concluded that section 493.6119 granted the private investigator a valid privilege; that a subpoena was insufficient to override the privilege provided in section 493.6119; and that the private investigator did not have to reveal any of the results of his investigation "because of the privilege provided in said Statute." *Id.* This order does not equate the "privilege" to the attorney-client privilege afforded pursuant to Fla. Stat. § 90.502 and Fed. R.Evid. 502.

9. Although the assertion of a blanket privilege is understandable given the novel issue raised herein, the usual practice is for a witness to attend a deposition and assert claims of privilege on a question-by-question basis. *See generally Atlantic Sounding Co., Inc. v. Townsend,* Case No. 3:05–cv–649–J–20HTS, 2006 WL 4702150, *1–2, 2006 U.S. Dist. LEXIS 21330, *4 (M.D.Fla. Apr. 20, 2006). No decision is reached herein whether Camil has a valid Fifth Amendment privilege to refuse to respond to the discovery requests. Camil seems to suggest that he will be accused of committing a crime if he responds to the discovery requests at the direction of a court order. Doc. 9 at 8–9. After discussing the protections afforded pursuant to the Self–Incrimination Clause, the Court, in *United States v. Gecas,* 120 F.3d 1419, 1428 (11th Cir.1997), stated that "[t]he Clause only protects against the actual "infliction of criminal penalties on the witness"—a criminal conviction-based on self-incriminating testimony. *Id.* For this reason, the Supreme Court has stated that a violation of the Self–Incrimination Clause does not necessarily occur at the time the self-incriminating testimony

Camil also argues that the seven (7) production requests in the subpoena, doc. 4–1, exhibit 1 at 7, are unreasonable and unduly burdensome. Doc. 4 at 10–12. Ubiquiti asserts that this and other procedural issues could have been resolved without involving this Court. Doc. 7 at 9. But, Ubiquiti does not offer any suggestions and neither does Camil. Ubiquiti's request for Camil to produce all documents and communications rather than those that may be relevant to Ubiquiti's claims, or for good cause shown "any matter relevant to the subject matter involved in the action," is not justified. As noted by Camil, the request has no temporal limitations.

 "The moving party has the burden of proof to demonstrate 'that compliance with the subpoena would be "unreasonable and oppressive." ' " *Wiwa*, 392 F.3d at 818 (citations omitted). "A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Id.* Conversely, Rule 45(c)(1) imposes on the issuer of the subpoena an affirmative duty to avoid imposing undue burden or expense on the non-party. *See* Fed.R.Civ.P. 45(c)(1); *see also* Fed.R.Civ.P. 45(c)(2)(B) (an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from compliance). This duty reflects a balancing between the litigants' need to obtain information from non-parties and the need to protect outsiders to the litigation from having to incur undue burden and expense. Also, "modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

 Applying the balancing test set forth herein, *see, e.g., Wiwa, Cytodyne,* and *Bozeman,* it appears that the requested information is relevant to Ubiquiti's claims and appears reasonably calculated to lead to the discovery of admissible evidence as asserted by Ubiquiti. *See* Doc. 7 at 1–6. The problem with the document production subpoena is that it is facially overbroad and does not have any time parameters.

If Ubiquiti desires to go forward with its discovery requests, it shall modify the subpoenas so that the subject matter for each of the seven (7) items is described with particularity and thus narrowly tailored and with time parameters. Any amended subpoena requesting Camil to appear for deposition should describe with particularity the subject matter(s) of the proposed inquiry.

Accordingly, Camil's motion to quash, doc. 4, is **DENIED** in part as stated herein. Camil's motion to quash is **GRANTED** in part such that Ubiquiti shall be required to serve on counsel for Camil amended subpoenas that comply with this Order. Camil shall produce the requested documents and communications within fourteen (14) days of service of the amended subpoena and appear for deposition within twenty one (21) days of service unless Camil and Ubiquiti agree otherwise. Ubiquiti's motion to file and permanently seal Exhibit I, doc. 8, is **GRANTED.** Camil's request for attorney fees is **DENIED.** Jurisdiction is retained to determine, upon motion and response and submission of appropriate proof, whether costs should be awarded to either party. *See Bozeman,* 2010 WL 4386826, at *4, 2010 U.S. Dist LEXIS 121678, at *10–11.

is compelled. The actual violation, if any, occurs only at *a witness's own criminal trial. See United States v. Verdugo–Urquidez,* 494 U.S. 259, 264, 110 S.Ct. 1056, 1060, 108 L.Ed.2d 222 (1990)." A witness must have "reasonable cause" to invoke the protection-a standard that does "not require a high showing." *United States v. Perez,* 661 F.3d 568, 580 (11th Cir.2011). With that said, "the privilege does not protect against 'remote and speculative possibilities' " of incrimination. *United States v. Gecas,* 120 F.3d at 1424.