GREAT AMERICAN INSURANCE COMPANY, Plaintiff,

v.

The VETERAN'S SUPPORT ORGANI-ZATION, Richard Van Houten, Michelle Van Houten, Steve Casella, and Robert Cruz, Defendants.

CASE NO.15–80020–CIV–COHN/SELTZER

United States District Court, S.D. Florida.

Signed June 12, 2015

Daniel Tranen, Wilson Elser, Moskowitz Edelman & Dicker, LLP, Edwardsville, IL, James K. Thurston, Wilson Elser, Moskowitz Edelman & Dicker, Chicago, IL, Jodi Goldberg, Barrett Rodney, Janis Wilson Elser, Moskowitz Edelman & Dicker, LLP, West Palm Beach, FL, for Plaintiff.

Robert Dewitt McIntosh, Adam B. Cooke, McIntosh Schwartz, P.L., Fort Lauderdale, FL, for Defendants.

## ORDER ON NON–PARTY MOTION TO QUASH SUBPOENA

BARRY S. SELTZER, United States Magistrate Judge.

THIS CAUSE is before the Court on the Non–Party Office of the Attorney General of Texas' Motion to Quash Subpoena and Motion for Protective Order (DE 41), Plaintiff's Response (DE 46), and the Non–Party's Reply (DE 62). The matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the United States District Court for the Southern District of Florida.

## BACKGROUND [1]

Plaintiff Great American Insurance Company ("Great American") brings this action against The Veteran's Support Organization ("VSO") and its officers and directors, including Richard Van Houten ("R. Van Houten"), Michelle Van Houten ("M. Van Houten"), and Robert Cruz ("Cruz") (collectively the "individual defendants"). Great American issued two "claims-made" Nonprofit Solutions Insurance Policies to VSO, one for the policy period November 8, 2011, through November 8, 2012 (the "First Policy") and one for the policy period November 8, 2013, through November 8, 2014 (the "Second Policy"). The policies covered VSO and its officers and directors (the individual defendants) for claims made against them for a "wrongful act."

On September 28, 2012—during the First Policy period—the Texas Attorney General (the "Texas AG") served on VSO a Request to Examine. The Texas AG demanded that VSO produce documents (pursuant to 66 separate document requests) related to an investigation that VSO "may be making misrepresentations concerning its non-profit services to consumers and ... [it] failed to disclose certain information to consumers in violation of state and federal laws." First Amended Complaint ¶ 2 (DE 26). The Request to Examine advised VSO that if it failed or refused to produce the documents it would forfeit its rights to do business in Texas and that its permit or charter would be canceled or forfeited. After VSO (allegedly) failed to fully respond to the Request to Examine, on November 19, 2012, on an unspecified date in December 2013, and on February 13, 2014, the Texas AG contacted VSO demanding the documents it had not provided pursuant to the Request to Examine. On March 19, 2014, State of Texas, through the Texas AG, brought suit against VSO (and four individual defendants)[2] in Texas state court (the "Texas AG lawsuit").[3] See State of Texas' Origi-

1. The "facts" set forth in the background are taken from Plaintiff Great American's First Amended Complaint (DE 26); they, however, are merely allegations and ultimately may not be supported by the evidence.

2. The individual defendants in the Texas action are the same individual defendants in this action.

3. In a filing in this action, the Texas AG has described VSO's alleged (mis)conduct in Texas:

VSO [a nonprofit organization run by the individual defendants] began soliciting funds in Texas as a nonprofit in 2010 and continued to do so at the direction of the individual defendants. In fact, VSO, acting through the individual defendants, repre-

nal Petition and Applications for Temporary Injunction and Permanent Injunction (DE 26–2). Some of the allegations in that lawsuit refer to VSO's failure to adequately respond to the Request to Examine. The Texas AG seeks termination of VSO's Certificate of Registration and its cessation of business in Texas.

In the instant case, Great American alleges that the Request to Examine made by the Texas AG was served on VSO (on September 28, 2012) during the First Policy period and that the Texas AG lawsuit was filed against VSO (on March 19, 2014) during the Second Policy period. According to Great American, the Request to Examine constituted a claim under the First Policy, pursuant to which VSO was obligated to provide notice of the Request "as soon as practicable" but "in no event later than 90 days after the end of the Policy year" (which ended on November 8, 2012). Great American alleges that VSO failed to provide timely notice of the claim and, therefore, there is no coverage under the First Policy. Further, Great American alleges that the Texas AG lawsuit (which also constitutes a claim) and the Request to Examine involve the same "wrongful acts"; therefore, the claim is deemed to have occurred on September 28, 2012, when the Request to Examine was served on VSO. Great American, therefore, alleges that because VSO failed to give timely notice of the claim, there is no coverage under either the First or the Second policy.

Great American further alleges that no coverage exists because the Texas AG lawsuit seeks "civil penalties" against VSO and "civil penalties" are expressly exempted as a "loss" under the terms of the policy. And Great American alleges that the monetary relief sought by the Texas AG—disgorgement of ill-gotten monies—is also not considered a "loss" because the policy exempts "any amounts which may be deemed uninsurable under the law." Great American also alleges that based on the Texas AG lawsuit two other provisions may apply to limit or exclude coverage under the policies—a personal profit and fraud exclusion and an other insurance exclusion.

Additionally, Great American alleges that is entitled to a rescission of the policy, pursuant to Florida Statute § 627.409. That statute, *inter alia*, permits rescission of insurance policies that contain a fraudulent misrepresentation, omission, concealment of facts, or incorrect statement material to the acceptance of the risk assumed by the insurer, where had the true facts been known the insurer would not have issued the policy or provided coverage for the hazard resulting in the loss. According to Great American, Defendant Michelle Van Houten, on behalf of VSO, misrepresented on the Proposal Form that there had been no civil or administrative proceedings against VSO or its officers and directors either during the prior three years or then pending when, in fact, VSO was involved in an administrative proceeding with the Texas AG who had served a

---

sented to the general public—from which it was soliciting donations—that its charitable purpose was to support local homeless veterans and provide them housing and a work program. However, VSO and the individual defendants acted contrary to VSO's charitable purpose and solicitation representations when they used donations received from the Texas public to equally support nonveterans in VSO's housing and

work programs and diverted such donations to areas not local to where the donations were received.

Texas AG's Motion to Quash Subpoena and Motion for Protective Order at 3 (DE 41). According to the Texas AG, its authority to investigate organizations such as VSO derives from section 12.151 of the Texas Business Organization Code. *Id.*

Request to Examine. Great American alleges that this misrepresentation was material to the acceptance of the risk or to the hazard it assumed, entitling it to rescission of the Second Policy. Based on the same misrepresentation on the Proposal Form, Great American also asserts a claim for common law fraud.

In its Amended Complaint, Great American seeks: (1) a declaration that no coverage exists for VSO or the individual defendants under the Great American policies and, hence, it has no obligation to defend or pay for any for loss or costs of defense; (2) a finding that Great American is entitled to rescission of the Second Policy issued to VSO; and (3) an award of compensatory damages on its fraud claim.

*Non–Party's Motion to Quash Subpoena and Motion for Protective Order*

During the course of the instant litigation, Great American served on the Texas AG a subpoena *duces tecum* seeking the following documents:

- documents produced to the Texas AG by VSO in response to Request to Examine Nos. 43 and 44 and in response to the Texas AG's February 13, 2014 letter to VSO, both of which sought a copy of the most recently amended complaint and answer in any litigation against VSO, and a copy of any assurances of voluntary compliance or discontinuance, consent decrees, settlement agreements or other similar agreements demonstrating resolution of the litigation (Categories 1 and 2 of the Rider attached to the subpoena);

- all communications on November 19, 2012, from the Texas AG to VSO concerning the status of the delinquent Request to Examine responses and referenced in paragraph 49 of the Texas AG lawsuit against VSO (Category 3 of the Rider attached to the subpoena);

- all communications and/or documents to and/or from the Texas AG and VSO related to the Request to Examine and to the February 13, 2014 letter [4] to VSO from the Texas AG (Categories 4 and 5 of the Rider attached to the subpoena); and

- all communications and/or documents related to the Texas AG's investigation of VSO (Category 6 of the Rider attached to the subpoena).

The Texas AG moves to quash the subpoena and for the entry of an order protecting it from producing the documents sought thereby. The Texas AG first argues that all documents and communications pertaining to the Request to Examine directed to VSO are statutorily exempt from disclosure under the Texas Business Organization Code § 12.154, which provides:

Information held by the attorney general and derived in the course of an examination of an entity's records or documents is not public information, is not subject to Chapter 552 Government Code, and may not be disclosed except:

(1) in the course of an administrative or judicial proceeding in which the state is a party;

---

4. In addition to copies of documents relating to any litigation against VSO and the resolution thereof, the February 14, 2013 letter indicated that in response to the Request to Examine, VSO had failed to provide the following documents: (1) minutes of VSO's board of director meetings; (2) documents relating to any persons who have received compensation from VSO; (3) expense account records and various documents relating thereto; (4) documents identifying each person that has received gift cards as part of VSO's gift card program; and (5) documents reflecting the amount and method of payment to those participating in VSO's "Work Program" and the benefits those participants received.

(2) in a suit by the state to:

 (A) revoke the registration of the foreign filing entity or terminate the certificate of formation of the filing entity; or

 (B) collect penalties for a violation of the law of this state; or

(3) to provide information to any officer of this state charged with the enforcement of its laws.

Tex. Bus. Orgs.Code Ann. § 12.154 (2003).

■ Great American first responds that the statute applies only to "public disclosure" of materials and is silent as to responses to a subpoena. According to Great American, under the agreed protective order entered by this Court (DE 55), the Texas AG could mark its documents as "confidential," and Great American would be bound not to "publicly disclose" any of the documents it obtains from the Texas AG. Great American's argument is unavailing. Although § 12.154 states that the information derived in the course of the Texas AG's examination of an entity's records or documents is not "public information," it additionally provides that such records and documents **may not be disclosed** *except* in three situations: (1) in a administrative or judicial proceeding *in which the state of Texas is a party;* (2) in certain suits *by the state of Texas;* and (3) to provide information to any Texas officer charged with the enforcement of Texas' laws. None of these exceptions apply here. Texas (or the Texas AG on its behalf) is not a party in the instant lawsuit [5] nor was the instant lawsuit brought by Texas (or the Texas AG on its behalf). And clearly Great American is not a Texas law enforcement officer. This Court

agrees with the Texas AG that all documents and communications pertaining to the Request to Examine directed to VSO are statutorily exempt from disclosure under § 12.154.

Great American, however, argues that the materials the Texas AG obtained in its investigation of VSO are no longer exempt from disclosure due to the Texas AG's filing of the Texas law suit. In support of this argument, Great American relies on 1 paragraph of a 38–page (November 2012) report by the Texas AG to the Texas Legislature (DE 46–1) concerning its investigation of the Daughters of the Republic of Texas (as trustee of the Alamo). The section of the report on which Great America relies describes generally the investigative process and the Texas AG's authority to request information through a Request to Examine. It also states: "Under Section 12.154 of the [Texas Business Organizations] Code, information [the Texas AG] obtains in response to [a Request to Examine] is deemed "not public information" and therefore must be kept confidential unless the State institutes legal proceedings against the corporation in court."[6] *Id.* at 6. Great American additionally argues that the Texas AG waived the confidentiality provisions of the statute by attaching to its Texas state court petition documents pertaining to its investigation. The Court is not persuaded that the Texas AG's filing of the lawsuit in a Texas state court waives the statutory prohibition on disclosure in cases not brought by the Texas AG or in which the Texas AG is not a party. Section 12.154 permits disclosure *in an action* brought by the Texas AG and *in an action* in which the Texas AG is a

---

**5.** The Court notes that on June 8, 2015, the Texas AG filed a Motion to Intervene in this action (DE 65). However, as of this date, the Texas AG has not been granted permission to intervene and, therefore, is not now a party herein.

**6.** The Texas AG's report indicated that it did not include any information it had obtained exclusively in response to a Request to Examine; rather, the report was based on information obtained from other sources.

party. The statute, however, does not provide that disclosure in those actions waives the prohibition for all other purposes. And Great American has not cited any legal authority supporting its waiver arguments. Accordingly, the instant Motion to Quash is GRANTED as to Categories 1–5 of the subpoena.[7] *See* Federal Rule of Civil Procedure 45(d)(3)(A)(iii) ("On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies.").

As to the remaining category of documents sought by the subpoena—communications and/or documents related to the Texas AG's investigation of VSO—the Texas AG represents that these documents are its "investigative file." Section 17.61 of the Texas Business and Commerce Code (the "Civil Investigative Demand statute") authorizes the consumer protection division of the Texas AG to request documents from persons or entities that have material relevant to possible violations of the Deceptive Trade Practices—Consumer Protection Act. According to the Texas AG, its investigative file ·contains a large number of documents received in response to several civil investigative demands, all of which are statutorily protected from disclosure by § 17.61(f). In pertinent part, § 17.61(f) provides:

> No documentary material produced pursuant to a demand under this section, unless otherwise ordered by a court for good cause shown, shall be produced for inspection or copying by, nor its contents be disclosed to any person other than the authorized employee of the of-

fice of the attorney general without the consent of the person who produced the material.

Bus & Com.Code § 17.61(f). Accordingly, absent permission from the civil investigative demand recipient, the Texas AG can only produce materials obtained through such demands upon a court order on a showing of good case.

Great American responds that VSO and the individual defendants herein have indicated that they have no objection to the production of these documents by the Texas AG, as evidenced by a May 4, 2015 email (DE 46–2) from Defendants' attorney (Robert McIntosh) to Great American's attorney (Daniel Tranen). The email reads: "On behalf of VSO we have no objections to the state of Texas providing you copies of the documents they were sent by VSO and Tripp Scott the VSO lawyers." This Court questions whether an email between counsel in this action is sufficient to waive the statutory disclosure prohibition, particularly as the record is silent as to whether VSO ever formally granted the Texas AG "permission." [8]

 More significantly, as the Texas AG notes in its Reply (DE 62 at 7), the statute provides that the party providing the documents pursuant to a civil investigative demand must consent to the disclosure. Here, Defendants were served with a Request to Examine, not a civil investigative demand. According to the Texas AG, the documents it received pursuant to civil investigative demands were produced by third-parties, not by Defendants. Defendants' consent, therefore, does not lift

---

7. Categories 1–5 all seek either documents obtained by the Texas AG from VSO or communications by the Texas AG to VSO. Although § 12.154 precludes the Texas AG from disclosing these documents, it does not preclude VSO or the individual defendants from disclosing these documents to Great Ameri-

can through the discovery process in this action.

8. The Court notes that the email is dated the same day as Great American filed its Response to the instant Motion.

the statutory non-disclosure prohibition. Accordingly, Great American may only obtain these documents through a court order "upon good case shown." Great American states that "[g]ood cause exists for production of these documents as the Texas AG's investigative file contains relevant materials that are likely to lead to the discovery of admissible evidence in this litigation." Response at 8 (DE 46). Great American, however, does not explain further, and the Court does not find that a summary statement of relevancy, without more, rises to the level of "good cause." Accordingly, the Texas AG is not required to produce any documents in its investigative file that it received in response to a civil investigative demand.

With respect to all other documents in its investigative file, the Texas AG argues that they are work product protected from disclosure, citing Federal Rule of Civil Procedure 26(b)(3)(A).[9] According to the Texas AG, agency attorneys are involved in all aspects of the investigation, both at the pre-litigation and post-litigation stages. The Texas AG contends that all investigations involve the thought processes of the assistant attorney generals.

■■■ Great American responds that the Texas AG has not identified with any particularity the alleged privileged documents contained in its investigative file nor has the Texas AG cited any support for its assertion of work product protection. Great American additionally argues that "under Texas law, the work product privilege 'protects only the mental impressions, opinions, and conclusions of the lawyer and not the facts.'" Response at 7 (DE 46) (quoting *Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 554 n.8 (Tex.1990)). The Texas work product protection, set forth in Texas Rule of Civil Procedure 192.5, however, is not so limited. Although Rule 192.5(b)(1) provides that an attorney's "mental impressions, opinions, conclusions, or legal theories—termed core work product—is not discoverable, the Rule also protects other work product, albeit to a lesser extent. Under Rule 192.5(b)(2), such other (non-core) work product is discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means." Tex.R. Civ. P. 192.5(b)(2). More importantly, however, Great American's argument presupposes that Texas law governs this determination. Yet, even in a diversity case (as here), it is federal law that governs work product determinations. *See Batchelor v. Geico Cas. Co.,* No. 6:11–cv–1071–Orl–37GJK, 2014 WL 3697691, at *3 (M.D.Fla. Apr. 22, 2014) ("While Rule 501, Federal Rules of Evidence, provides that a state's law of privilege governs in federal diversity cases, the work product doctrine is a limitation on discovery in all federal cases and, thus federal law provides the primary decisional framework."); *Gold Coast Prop. Mgt. v. Valley Forge Ins. Co.,* No. 09–60029, 2010 WL 9871643, at *4 (S.D.Fla. Jan. 26, 2010) ("In diversity actions, issues of work product are governed by federal law."). The Court questions

9. Rule 26(b)(3)(A) provides:

Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4) [relating to experts who may testify], those materials may be discovered if:
(i) they are otherwise discoverable under Rule 26(b)(1) [related to relevancy]; and
(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed.R.Civ.P. 26(b)(3)(A).

whether work product protection would extend to all documents in the Texas AG's investigative file. The Court, however, need not now decide that issue as the Texas AG's Motion to Quash is due to be granted for other reasons; Great American's subpoena with respect to Category 6 is facially overbroad and compliance would place an undue burden and expense on the Texas AG, a non-party.

Category 6 of Great American's subpoena seeks "any and all communications and/or documents related to the Texas AG's investigation of VSO." The Court *sua sponte* finds that this request is overbroad on its face in that it is not limited as to scope, time, particular documents, or types of documents.[10] Federal Rule of Civil Procedure 45(c)(1) places a burden on the party issuing a subpoena "to take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." And under Rule 45(c)(3)(A)(iii), a court may quash a subpoena that subjects the receiving person to undue burden.[11]

"With regard to the burden imposed on non-parties in responding to discovery requests, courts consider the following factors: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request." *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 521 n. 2 (N.D.Fla.2013) (balancing enumerated factors in deciding motion to quash subpoenas) (quoting *Bozeman v. Chartis Cas. Co.*, No. 2:10–cv–102–FtM–36SPC, 2010 WL 4386826, at *3–4 (M.D.Fla. Oct. 29, 2010)); *accord United Tech. Corp. v. Mazer*, No. 05–80980–CIV–RYSKAMP/VITUNAC, 2007 WL 788877, at * 1 (S.D.Fla. Mar. 14, 2007); *Am. Elec.*

*Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D.Ohio 1999). In balancing the need for discovery against the burden imposed on the person from whom documents are sought "the status of a person as a non-party is a factor that weights against disclosure." *Id.; see also Schaaf v. SmithKline Beecham Corp.*, No. 3:06–CV–120–J–25TEM, 2006 WL 2246146, at *2 (M.D.Fla. Aug. 4, 2006) ("Courts must also consider the status of a witness as a nonparty when determining the degree of burden; the status of the person as a non-party is a factor often weighing against disclosure.").

Here, as previously noted, the Texas AG (upon whom the subpoena was served) is not a party to this action, which militates against requiring disclosure of the documents sought. The Court also finds that the breadth of the discovery requests and the time period covered by the request also militate in favor of non-disclosure. Category 6 of the subpoena seeks production of the Texas AG's entire investigative file without any temporal limitation. The investigation has been ongoing since at least as early as August 2012, when the Request to Examine was served on VSO. With respect to the remaining two factors, the relevance of and Great American's need for the Texas AG's entire ligation file is not apparent. In this action, Great American is primarily seeking a declaration from the Court that its policies afford no coverage for VSO and that it has no obligation to defend or pay for any for loss or costs of defending the Texas AG lawsuit. The resolution of the issues in such a declaratory action usually turns on the lan-

---

10. In the Texas AG's Motion, it did not complain of overbreadth or undue burden, although it did so in its Reply.

11. Similar to Rule 45, Rule 26(c) authorizes a court to enter an order to protect any person from whom discovery is sought from undue burden or expense.

 

guage of the insurance policy and, therefore, generally requires little, if any, discovery. In response to the instant motion, Great American has not explained its need for the Texas AG's entire investigative file, beyond a bare assertion that the documents sought are relevant. The Court believes that the production of the Texas AG's entire investigative file would encompass a large number of documents that have no relevance to the claims or defenses herein and would impose an undue burden on the Texas AG, which would have to review voluminous documents for privilege and compile a privilege log.[12] Having considered the totality of the factors, the Court GRANTS the Texas AG's Motion to Quash with respect to Category 6 of the subpoena. *See Schaaf*, 2006 WL 2246146, at *2 (ruling that facially broad subpoena imposed an undue burden on movant, thus, quashing such subpoena).

Based on the foregoing, it is hereby ORDERD that the Texas AG's Motion to Quash Subpoena (DE 41) is GRANTED and the Texas AG's Motion for Protective Order (DE 41) is DENIED as moot.

---

12. The Texas AG's submitted with its Reply Memorandum, an affidavit of a Texas assistant attorney general, to which Great American has not had an opportunity to respond. Although the Court reached its overbreadth and undue burden conclusions *sua sponte*, the affidavit confirms that the Court's conclusions are correct. Assistant Attorney General Corey Kintzer attests:

> After a full work day dedicated to reviewing files in an attempt to arrive at a page count of the documents involved in this investigation and litigation, our legal assistant counted 68,781 pages of documents. However, this number does not include seven standard size banker boxes of unscanned documents and the remaining half of the litigation file that remains to be counted. Note that the page count was not a physical page count but a count that simply required the legal assistant to generate summaries of the data in each electronic file. Even conducting the count in that manner took a full day and resulted in only half of the file being counted.
>
> . . .
>
> Many of the documents are kept in individual .pdf files and are not easily searchable. . . . Our information technology team would also have to expend considerable time and resources securing correspondence stored in electronic format. Such a monumental task would cripple a large portion of our team for several weeks and waste state resources, requiring [Consumer Protection Division] agents to identify, locate, and review over three years of material consisting of tens of thousands of pages of documents and correspondence.

Kintzer. Aff. ¶¶ 13, 17 (DE 62–1). Kintzer conservatively estimates that it would take 350 attorney hours and 400 support staff hours to comply with Great American's subpoena. *Id.* ¶ 17.

---

DONE AND ORDERED in Fort Lauderdale, Florida, this 12th day of June 2015.

